# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Vivaldi Servicios de Seguridad, Inc. | Civil No.: 18-cv- |
| Plaintiff, | |
| v. | |
| MAISO Group, Corp. a/k/a MAISO Group, a/k/a Maisogroup, a/k/a Grupo Maiso, | Racketeer Influenced and Corrupt Organization Act "RICO", Breach of Contract and Damages. |
| Jorge W. Maisonet-Rivera, a/k/a Maiso, | State Actions under PR Civil Code. |
| William Maisonet-Rodríguez, | |
| Evelyn Rivera, | |
| Transcripciones Jorev, Corp., | |
| Conjugal Partnership of William Maisonet-Rodríguez and Evelyn Rivera, | Plaintiff Demands Trial by Jury. |
| Lending Ease, Corp., | |
| Inopalt, Inc., | |
| Kitcor, Inc., | |
| Corporation A, | |
| Insurance Company A | |
| John Doe, Jane Doe, | |
| Defendants. | |

## VERIFIED COMPLAINT

**COMES NOW** the Plaintiff through the undersigned attorneys and very respectfully states, alleges and prays:

### INTRODUCTION:

The Plaintiff is a corporation dedicated to providing private security services in Puerto Rico to private businesses, hospitals, hotels and other entities. It employs over Four Hundred (400) people with security posts and missions all over the Islands of Puerto Rico and US Virgin Islands. Since 2015, the Plaintiff has been a victim of a fraudulent scheme by which the Defendants embezzled the funds reserved in a special account to pay IRS, Taxes and other important obligations and employee benefits.

The fraudulent scheme was discovered in June of 2017 and since then, the Plaintiff has been struggling to survive paying taxes, penalties, interests and making payment plans with different agencies in Puerto Rico. The defendants misappropriated over $782,000.00 from 2015 to 2017 in a continuous and related series of predicate acts.

The scheme depicted in this Complaint is a casebook Racketeering enterprise. All the necessary elements of a RICO Civil action are present in this Complaint exceeding the elements necessary to bring this type of action in this District. The Defendants individually and/or together as a conspiracy,

formed an enterprise for Racketeering activities called MAISO Group, Corp. The Plaintiff's damages, without taking into account, interest, attorneys' fees, costs, and triple damages under RICO, exceed **$2,282,028.00**.

## I. JURISDICTION AND VENUE:

1. This Honorable Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 given that the civil action arises from a Federal Statute. (Title 28, Section 1331 of the United States Code confers upon federal district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States.") The Federal Statute or Question is the **RACKEETER INFLUENCED AND CORRPUT ORGANIZATION ACT "RICO"**, 18 U.S.C. § 1962 (a), (b), (c) and (d) and 18 U.S.C. § 1964 (c).

2. Venue is proper pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965.

## II. PARTIES:

1. Plaintiff **VIVALDI SERVICIOS DE SEGURIDAD, INC.**, is a For Profit Corporation, in good standing and created under the Laws of the Commonwealth of Puerto Rico, Register Number 329119, the headquarters of the Corporation is in San Juan, Puerto Rico. Hereinafter referred as "the Plaintiff".

2.   Defendant **JORGE W. MAISONET RIVERA** is of legal age, single, accountant, business owner and resident of San Juan, Puerto Rico. His postal address is P.O. Box 1734, Bayamón, PR 00960-1734.

3. Defendant **WILLIAM MAISONET RODRIGUEZ** is of legal age, married, attorney at law, notary public, business owner and resident of San Juan, Puerto Rico. His postal address is P.O. Box 1734, Bayamón, P.R. 00960-1734.

5. Defendant **EVELYN RIVERA** is of legal age, married to co-defendant William Maisonet Rodriguez, administrator, business owner and resident of San Juan, Puerto Rico. Her postal address is P.O. Box 1734, Bayamón, P.R. 00960-1734.

6. The **CONJUGAL PARTNERSHIP OF WILLIAM MAISONET RODRIGUEZ**, is the conjugal partnership created by act of marriage under the Civil Code of Puerto Rico, between the co-defendant **William Maisonet Rodriguez** and **Mrs. Evelyn Rivera**, hereby included in this Complaint.

7.   **MAISO GROUP, CORP.** is a corporation acting the facto, a partnership or another type of business entity, with offices in Bayamon, Puerto Rico, marketed, promoted and in the business of providing services in Puerto Rico. The defendants **JORGE MAISONET RIVERA**, **WILLIAM MAISONET RODRIGUEZ** and (3) **EVELYN RIVERA** are all administrators and partners of

**MAISO GROUP, CORP.** Its postal address is P.O. Box 1734, Bayamón, PR 00960-1734.

8. **TRANSCRIPCIONES JOREV, CORP.** is a corporation of any other type of business entity (originally registered as a corporation at the Department of State of the Commonwealth of Puerto Rico) with offices in San Juan, P.R. at Avenue Muñoz Rivera, Cond. Aquablue 1701, Bayamon, PR 00929 and postal address P.O. Box 1734 Bayamón, PR 00960-1734. The defendants **JORGE MAISONET RIVERA**, **WILLIAM MAISONET RODRIGUEZ** and **EVELYN RIVERA** are all administrators and partners of **TRANSCRIPCIONES JOREV**.

9. Defendant **LENDING EASE, CORP.** is a corporation created under the Laws of the Commonwealth of Puerto Rico. Its postal address is P.O. Box 1734, Bayamon, PR 00960-1734.

10. Defendant **INOPALT, INC.** is a corporation created under the Laws of the Commonwealth of Puerto Rico. Its postal address is P.O. Box 1734, Bayamon, PR 00960-1734.

11. Defendant **KITCOR, INC.,** is a corporation created under the Laws of the Commonwealth of Puerto Rico. Its postal address is P.O. Box 1734, Bayamon, PR 00960-1734.

12. **CORPORATION A** are unknown corporate entities brought to the Complaint under the reasonable believe that there are corporate entities

involved in the illegal and tortuous predicate acts of the Defendants and will be discovered using the Discovery.

13. **INSURANCE COMPANY A** is an Unknown Defendant brought to the Complaint under the reasonable believe that there is an Insurance Company insuring the Defendants under a General Liability or any other type of insurance policy to cover the damages suffered by the Plaintiff for the illegal and tortuous acts of the Defendants.

14. **JOHN DOE** and **JANE DOE** are fictitious names to bring to the Complaint persons involved in the Racketeering Activities unknown to the Plaintiff.

15. Due to the fraudulent nature of the predicate acts and the concealment of information typical of Racketeering activities, some of the Defendants represented as corporations could be d/b/a's, De Facto Partnerships or The Facto Corporations, but all were involved in the Racketeering as "Entities", as defined under The RICO Act. The Defendants also used aliases to perform bank transactions such as "Esar Vivaldi", "Carlos", and other fictitious names. It is alleged that **JORGE MAISONET RIVERA**, **WILLIAM MAISONET RODRIGUEZ** and **EVELYN RIVERA** were hiding behind those names to conceal the predicate acts.

## III. ALLEGATIONS:

(All previous allegations are hereby re-alleged in this Section.)

## A. <u>The Agreement</u>

1. The Plaintiff is a corporation in good standing and created under the Laws of the Commonwealth of Puerto Rico, Register Number 329119, the Principal Offices of the Corporation are in San Juan, Puerto Rico.

2. Since its creation as a corporation **MAISO GROUP, CORP.** was formed by **JORGE W. MAISONET RIVERA**, **WILLIAM MAISONET RODRIGUEZ**, and **EVELYN RIVERA**. The entity has been in business since its creation to the present.

3. Prior to **MAISO GROUP**, Jorge W. Maisonet was working as Maisonet Accounting, but he joined his parents to create the entity **MAISO GROUP** adding additional services to the original enterprise. These services included payroll management, accounting, legal counseling, obtaining licenses and official documents for clients, transcripts and para-legal work.

4. The Plaintiff retained the services of **MAISO GROUP** on March of 2015 for a monthly flat fee of Four Hundred Dollars ($400.00). This fee was raised several months later to One Thousand Dollars ($1,000.00) per month after the Plaintiff acquired a Private Security Company and expanded in terms of activities and amount of employees.

5. Since the beginning of their services **MAISO GROUP** operated from their office in Bayamón, Puerto Rico. **JORGE W. MAISONET-RIVERA, WILLIAM MAISONET RODRIGUEZ** and **EVELYN RIVERA** shared office, administration, telephone numbers, permits, sign, Postal Address and all utilities including Internet.

6. **WILLIAM MAISONET RODRIGUEZ** offered legal advice as partner of **MAISO GROUP** with knowledge of activities, decision making authority and economic interest in the entity.

7. **EVELYN RIVERA** was an administrator of **MAISO GROUP** with knowledge of activities, decision making authority and economic interest in the entity. She oversaw **MAISO GROUP's** business endeavor called **TRANSCRIPCIONES JOREV,** a corporation created by **WILLIAM MAISONET RODRIGUEZ** acting as incorporator and President.

8. **TRANSCRIPCIONES JOREV** got its name from the mix of **JORGE** and **EVELYN** and provides transcription services to clients in Puerto Rico. It is alleged that **TRANSCRIPCIONES JOREV** was used to facilitate the embezzlement of funds and to launder the proceeds of the Racketeering activities.

9. **TRANSCRIPCIONES JOREV, CORP.** never performed a job for the Plaintiff. Notwithstanding that fact, over Thirty-Two Thousand Dollars ($32,000.00) were paid to **TRANSCRIPCIONES JOREV** throughout the period of the conspiracy in a sequence of more than twenty (20) payments.

**WILLIAM MAISONET-RODRIGUEZ** acted as Incorporator and President for **TRANSCRIPCIONES JOREV, CORP.** and had access to its bank accounts.

10.     **WILLIAM MAISONET RODRIGUEZ** was essential to **MAISO GROUP**. He provided the professional image of his Law Firm with more than thirty (30) years of existence, office and personnel. Clients such as the Plaintiff were comfortable "knowing" that he was part of **MAISO GROUP**. As in many RICO Enterprises the image of legality was important to promote and market the fraudulent scheme of Racketeering.

11.     **WILLIAM MAISONET RODRIGUEZ** and his wife **EVELYN RIVERA** received thousands of dollars from embezzled funds using the corporate account as a veil. They continued using the Corporate structure of the corporation opened in the PR Department of State on April 14, 2013 way after this corporation was cancelled by the PR Department of State on October 28, 2016.

12.     **TRANSCRIPCIONES JOREV** is one of the businesses operated and owned by the Racketeering Enterprise known as **MAISO GROUP**.

13.     **LENDING EASE, INC.** is one of the businesses operated and owned by **MAISO GROUP**. This corporation was used by **MAISO GROUP** to receive, conceal and launder thousands of dollars misappropriated, embezzled and fraudulently obtained from the Plaintiff.  This in a continuous and related series of predicate acts from 2015 to 2017.

14.    **INOPALT, INC.** is one of the businesses operated and owned by **MAISO GROUP**. This corporation was used by **MAISO GROUP** to receive, conceal and launder thousands of dollars misappropriated, embezzled and fraudulently obtained from the Plaintiff.  This in a continuous and related series of predicate acts from 2015 to 2017.

15.    **KITCOR, INC.,** is one of the corporations operated and owned by **MAISO GROUP**.  It was acquired from its original owner on May 26, 2016. It used funds embezzled from the accounts of the Plaintiff to acquire Tony's Pizzeria and Kalifa Restaurant, both businesses in Hato Rey, Puerto Rico. This corporation was used by **MAISO GROUP** to receive, conceal and launder thousands of dollars misappropriated, embezzled and fraudulently obtained from the Plaintiff, on a continuous and related series of predicate acts from 2015 to 2017.

16.    **MAISO GROUP's** racketeering activities affected the interstate commerce by using the US Mail, Internet, FDIC Insured Financial Institutions for Wire Transfers, fraudulent checks, debit cards, ATM machines and email accounts to commit the predicate acts.

17.    It is alleged that an officer of **MAISO GROUP** deposited embezzled funds in Off-Shore accounts in Tortola BVI and Bahamas.

18.    It is alleged that a member of **MAISO GROUP** used the embezzled funds to bet in casinos in Puerto Rico and in Las Vegas.

19.   It is alleged that all members of **MAISO GROUP** obtained benefits such as expensive traveling, golf club memberships, jewelry, unsecured cash loans, exotic cars, etc. using the funds embezzled from the Plaintiff.

20.   Even after the discovery of the **RICO Enterprise's Scheme**, **MAISO GROUP** has continued operating in Puerto Rico with several Clients that are not aware of the nature of this enterprise. **WILLIAM MAISONET RODRIGUEZ**, **JORGE W. MAISONET RIVERA** and **EVELYN MAISONET** still use the same office, they even live together and operate businesses from the same locations including Aquablue Building in Hato Rey.

21.   The Racketeering Scheme put in place by the defendants **WILLIAM MAISONET RODRIGUEZ**, **JORGE W. MAISONET RIVERA** and **EVELYN MAISONET** was detrimental to the property and affected the business of the Plaintiff.

22.   The Plaintiff was growing its business exponentially in a market that needs private security, specially after the pass of Hurricanes Irma and María. Private Security companies have seen their business grow with additional security guard posts, need of armed escorts for diesel trucks and electric plant generators all over the Island and USVI. The lack of economic resources and cash flow caused by the Defendants with their Racketeering Scheme caused the Plaintiff to hold the recruiting of personnel and the acquisition of patrolling vehicles, redirecting the funds to pay the IRS, State Insurance Fund premiums, Department of Treasure Taxes, and other

obligations that were supposed to be paid with the funds embezzled by **MAISO GROUP, CORP.**

23.    The Defendants independently, associated or conspiring with each other committed more than one hundred independent but related acts of theft, fraud, embezzlement and money laundering in a continuous period that lasted more than two (2) years, all within a Ten (10) years period.

24.    The Defendants independently, associated or conspiring with each other:

A.  Promoted **MAISO GROUP** as an entity dedicated to managing the accounting, payroll, permits and licenses of small and medium businesses.

B.  Obtained access to the Zero Balance Account of the Plaintiff where the funds for Taxes and Employee benefits were deposited.

C.  Changed the postal address on regulatory agencies to the postal address of **MAISO GROUP** to avoid detection of the frauds.

D.  Created and acquired corporations controlled by **MAISO GROUP**, to receive money transfers from the Zero Balance Bank account of the Plaintiff.

E.  Invested the embezzled funds in businesses such as restaurants and financial companies to create profit and launder the funds.

F.  Fraudulently represented a very bad financial situation to the share-holders of the Plaintiff.

G. Offered to buy shares of stock from the Plaintiff's Shareholders, using the proceeds of the Racketeering Enterprise.

25.   **MAISO GROUP** has acted before, is currently engaged in the same type of activities and represents a risk of future Racketeering predicate acts. In fact, one of the recent actions of MAISO GROUP was to fraudulently acquire the Restaurant Kalifa, located in Hato Rey, Puerto Rico. An complaint was filed in the San Juan, Superior Court against Jorge W. Maisonet Rivera alleging fraudulent checks and other actions to take possession of the business. The attorney representing Jorge W. Maisonet-Rivera is his co-defendant William Maisonet-Rodríguez.

26.   **MAISO GROUP** obtained authorized access to the Plaintiff's Bank Account on First Bank of Puerto Rico, with Bank Account Number 42-xxxx2899. He represented that to have access was essential to perform the payments and transfers needed to cover employee's payroll and the taxes obligations. The account token possession was part of the access to the Bank Account provided to **MAISO GROUP** to "legally" manage the accounting process.

27.   All Defendants had personal knowledge or should have had personal knowledge of all or part of the **MAISO GROUP** activities, and the Racketeering Scheme, their conduct, actions and expressions show intention and criminal knowledge, to this date.

28.    MAISO GROUP, CORP. acting as a corporation or as a d/b/a, as a
partnership or De Facto Partnership had previous experiences with
members of their family. Another member of this group, not included in
this Complaint (we reserve the right to include him after discovery) plead
guilty to a similar Bank Fraud Scheme before Judge Aida Delgado. It is
alleged that this Family member used to work from the **MAISO GROUP**'s
office in Bayamon, during the period of that conspiracy. The members of
**MAISO GROUP** are not new to this type of fraudulent activities.

## B. Predicate Acts

(When used in this Complaint, "**MAISO GROUP**" means an Enterprise as
defined by the RICO Act, formed by defendants **JORGE W. MAISONET
RIVERA, WILLIAM MAISONET RODRIGUEZ, EVELYN RIVERA** and
**JANE DOE.**)

29.    The fraudulent bank transactions of **MAISO GROUP** were continuous
from June 26, 2015 to June 23, 2017.

30.    **MAISO GROUP** committed more than two predicate acts in a Period of
Ten (10) Years. The Racketeering Activity Period of **MAISO GROUP** against
the Plaintiff extended for more than two (2) years from June 24, 2015 to
the year 2017.

31.    On June 26, 2015, **MAISO GROUP** fraudulently transferred $2,500 from
the Zero Balance Account of the Plaintiff to an account ending on 8767.

32.   On July 1st, 2015, **MAISO GROUP** fraudulently transferred $5,000 to INOPALT account ending on 1168.

33.   On July 1st, 2015, **MAISO GROUP** fraudulently transferred $1,000 to LENDING EASE account ending on 3548.

34.   On July 1st, 2015, **MAISO GROUP** fraudulently transferred $1,500 to Jorge W. Maisonet's account ending on 4519.

35.   On July 10, 2015, **MAISO GROUP** fraudulently transferred $3,000.00 to the account of Jorge Maisonet, account ending on 8767.

36.   On July 24, 2015, **MAISO GROUP** fraudulently transferred $1,000.00 to the account of Jorge Maisonet, No. 8767.

37.   On July 24, 2015, **MAISO GROUP** fraudulently transferred $4,300.00 to the account of Jorge W. Maisonet, ending on 4519.

38.   On August 7, 2015, **MAISO GROUP** fraudulently transferred $4,300.00 to the account of Jorge W. Maisonet, ending on 4519.

39.   Through the herein described pattern of racketeering, **MAISO GROUP** illegally obtained and transferred to other FDIC Secured, Bank Institutions accounts a total of more than **$89,000.00** in 2015.  The predicate acts were continuous and related in more than thirty (30) occasions.

40.   On January 7, 2016, **MAISO GROUP** illegally transferred $4,300 to **INOPALT, INC.** bank account ending on 1168.

41.   On January 22, 2016, **MAISO GROUP** illegally transferred $4,300 to **INOPALT, INC.** bank account ending on 1168.

42. During 2016 and 2017 **MAISO GROUP** illegally transferred over **$32,500.00** to **TRANSCRIPCIONES JOREV, CORP.** or **TRANSCRIPCIONES JOREV**, owned and presided by **WILLIAM MAISONET RODRIGUEZ**. This total amount represents more than ten predicate acts.

43. The Plaintiff has not included the detail of all the fraudulent transactions caused by **MAISO GROUP** during the **Year 2016.** To fulfill its obligation to allege a Pattern of Racketeering through Predicated Acts, the Plaintiff has only mentioned and alleged a small part of the fraudulent transactions made by **MAISO GROUP**. The Total estimated amount for Year 2016 of funds embezzled by **MAISO GROUP** is more than **$501,977.80**.

44. On January 18, 2017, MAISO GROUP illegally transferred $4,200.00 to Jorge W. Maisonet's account.

45. On January 27, 2017, MAISO GROUP illegally transferred $2,500.00 to Jorge W. Maisonet's account.

46. On Feb 1, 2017, **MAISO GROUP** illegally transferred $2,500.00 to **INOPALT, INC.**'s account.

47. On February 1st, 2017 **MAISO GROUP** illegally transferred $2,500.00 to **TRANSCRIPCIONES JOREV** and $2,500.00 to **LENDING EASE**.

48. On June 23, 2017, **MAISO GROUP** illegally transferred $1,652.38 to **INOPALT, INC.'s** account.

49. On June 23, 2017, **MAISO GROUP** illegally transferred $1,635.28 to **TRANSCRIPCIONES JOREV** and $2,537.02 to **LENDING EASE**.

50. To fulfill Plaintiff's obligation to allege a Pattern of Racketeering through predicated acts, we have only mentioned and alleged a small part of the fraudulent transactions that form the racketeering scheme. The Total estimated amount for Year 2017 of funds embezzled by **MAISO GROUP** is $191,050.42.

51. Defendants' predicate acts constituted a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) because the predicate acts are related and continuous. Each predicate act had the same or similar purpose: the predicate acts involved material misrepresentations, embezzlement, money laundering, and concealment of funds in a scheme to defraud the Plaintiff.

52. All defendants that are currently active corporations are "alter egos" of the personal defendants, the corporate veil must be removed by the Court. These corporations were used as tools to facilitate the Racketeering Scheme and to receive and laundered illegally obtained funds that ended in possession of the personal defendants. It is requested that the corporations **Transcripciones Jorev, Corp.**, **Lending Ease, Corp.**, **Inopalt, Inc.** and **Kitcor, Inc.**, be treated as alter egos of inefficient corporate entities owned by **MAISO GROUP** and its members.

53. Plaintiff have sufficiently alleged these predicate acts and pattern of racketeering to state a claim under 18 U.S.C. § 1962. As a proximate result of the pattern of racketeering activity and RICO violations engaged in by Defendants, Plaintiff have suffered injury to its business and property.

54. As a proximate result of the pattern of racketeering activity and RICO violations engaged in by Defendants, Plaintiff has suffered injury to its business and property.

55. Defendants violated 18 U.S.C. § 1962(d) by conspiring with each other to engage in the predicate acts alleged to form the violation of 18 U.S.C. § 1962(c), as described above. Defendants agreed to the objective of this conspiracy. Defendants took overt acts in furtherance of that conspiracy.

56. The Relevant Time Period for Defendants' conspiracy stems from at least the year 2015 to the year 2017. As a proximate result of the overt acts taken by Defendants, Plaintiff has suffered injury to their business and property.

57. The Plaintiff was growing its business exponentially in a market that needs private security, specially after the pass of Hurricanes Irma and María. Private Security companies have seen their business grow with additional security guard posts, need of armed escorts for diesel trucks and electric plant generators all over the Island and USVI.

58.    The lack of economic resources and cash flow caused by the Defendants with their Racketeering Scheme caused the Plaintiff to hold the recruiting of personnel and the acquisition of patrolling vehicles, redirecting the funds to pay the IRS, State Insurance Fund premiums, Department of Treasure Taxes, and other obligations that were supposed to be paid with the funds embezzled by **MAISO GROUP, CORP.** This situation has caused serious damages to the image of the company, the loss of income and potential of expansion are direct and indirect effects of the Racketeering activities of the Defendants.

59.    **WILLIAM MAISONET RODRIGUEZ** and **EVELYN RIVERA** used employees and agents under **MAISO GROUP, CORP.**, and/or paid by **JORGE W. MAISONET-RIVERA** to perform many duties of their office, including predicate acts, they are Vicariously liable and shall be held responsible for the actions or omissions of **JORGE W. MAISONET RODRIGUEZ** and **MAISO GROUP, CORP.**, **JANE DOE** and any other employee under their use and supervision.

60.    **WILLIAM MAISONET RODRIGUEZ** and **EVELYN RIVERA** used employees and agents under **MAISO GROUP, CORP.**, and/or paid by **JORGE W. MAISONET-RIVERA** to perform many duties of their office, in doing so they acted and intended to cause damages to the Plaintiff in reckless disregard of, or wanton indifference to, the harmful consequences to the property the Plaintiff.

61.   **WILLIAM MAISONET RODRIGUEZ** and **EVELYN RIVERA** used employees and agents under **MAISO GROUP, CORP.**, and/or paid by **JORGE W. MAISONET-RIVERA** to perform many duties of their office, if not with specific criminal intention, acted with Willful blindness. Proof of Willful blindness ignorance satisfies the requirement of **knowledge** as to a Racketeering conspiracy.

62.   All Defendants are jointly liable for the damages caused to the Plaintiff by their Scheme of Racketeering. The acts of the defendants showed great disregard for the Law and risk for future similar violations.

63.   To this date, the Plaintiff has suffered the following damages caused by Defendants acts as described supra:

a. Monetary Loss in an amount exceeding **$782,028.22.**

b. An estimated amount of not less than **$500,000.00** for the consequences of the Racketeering in terms of interests and penalties that Plaintiff has and will have to pay to the PR Department of Treasury, IRS, Department of Labor and other Government entities.

c. Loss of Business growth due to lack of available funds to obtain equipment, hire employees and compete in the Security Market, estimated in not less than **$1,000,000.00.**

Respectfully submitted on this 6th day of February of 2018.

Lead attorneys for the Plaintiff:

**LUIS RAFAEL RIVERA, ESQ.**
**USDC-PR #129411**
LUIS RAFAEL RIVERA LAW OFFICES
CAPITAL CENTER BLDG., SUITE 401
239 ARTERIAL HOSTOS AVENUE
SAN JUAN, PUERTO RICO 00918
PHONE: (787) 763-1780
luiswichyrivera@hotmail.com

**PETER DIAZ SANTIAGO, ESQ.**
**USDC PR #215104**
PMB 301
PO BOX 194000
SAN JUAN, PR 00919-4000
PHONE: 787-414-3214
Pdiaz.notifications@gmail.com

Plaintiff also requests an award of costs, expenses and reasonable attorney's fees pursuant to 18 U.S.C. §1964(c).

**STATE ACTIONS**

We re-allege all the factual allegations contained in the Instant Complaint to be considered as basis for the State Claims.

In addition to the Racketeering acts stated in this complaint, Defendants violated the covenants of good faith and fair dealing in violation of Article 1210 of the Puerto Rico Civil Code, 31 L.P.R.A. § 3375. Defendants are liable to the Plaintiff due to their acts and omissions.

All Defendants are liable under Article 1802 and 1803 of the PR Civil Code, for their tortuous actions and omissions including but not limited to willful negligence and vicarious responsibility for the actions of their agents and employees.

**JURY DEMAND**

Plaintiff demands that all questions of fact, compensation for damages and legal fees be decided by a JURY.

**WHEREFORE**, the Plaintiff respectfully requests that a judgment be entered after Jury Trial awarding to Plaintiff a compensation, as follows:

a. Monetary Loss in an amount exceeding $782,028.22.

b. An estimated amount of not less than $500,000.00 for the consequences of the Racketeering in terms of interests and penalties that Plaintiff has and will have to pay to the PR Department of Treasury, IRS, Department of Labor and other Government entities.

c. Loss of Business growth due to lack of available funds to obtain equipment, hire employees and compete in the Security Market, estimated in not less than $1,000,000.00.

d. Triple amount of damages as prescribed under The RICO Act.

e. Plaintiff also requests an award of costs, expenses and reasonable attorney's fees pursuant to 18 U.S.C. §1964(c).

All further relief as the Court and/or the Jury may deem appropriate, legal or equitable, in any form to which Plaintiffs may be entitled.

Attorneys for the Plaintiff:

**LUIS RAFAEL RIVERA, ESQ.**
**USDC-PR #129411**
LUIS RAFAEL RIVERA LAW OFFICES
CAPITAL CENTER BLDG., SUITE 401
239 ARTERIAL HOSTOS AVENUE
SAN JUAN, PUERTO RICO 00918
PHONE: (787) 763-1780
luiswichyrivera@hotmail.com

**PETER DIAZ SANTIAGO, ESQ.**
**USDC PR #215104**
PMB 301
220 DOMENECH AVENUE
SAN JUAN, PR 00919-4000
PHONE: 787-414-3214
Pdiaz.notifications@gmail.com

## VERIFICATION BY
## SWORN STATEMENT OF AUTHORIZED OFFICER

I, Juan G. Sánchez Frau, of legal age, married, resident of Aguas Buenas, PR, retired Police Officer of the PRPD, private detective, and Chief of Operations Officer of Vivaldi Servicios de Seguridad, Inc., declare under oath before a notary and under advise of penalty of perjury that:

All the allegations contained in the Instant Complaint are true and correct to the best of my knowledge, personal and product of the internal verification of documents and bank statements of our Company.

The Board of Directors of Vivaldi Servicios de Seguridad, Inc. has authorized me to represent the interests of the corporation and hire legal counsel, authorize our General Counsel and use corporate funds to hire any necessary experts for this Complaint.

I declare this in San Juan, Puerto Rico on February 6, 2018.

**Mr. Juan G. Sánchez Frau**
President and C.O.O.
Vivaldi Servicios de Seguridad, Corp.

Affidavit No. 9554

Sworn and subscribed before me by Juan G. Sánchez Frau, of legal age, single, resident of Aguas Buenas, PR, retired Police Officer of the PRPD, private detective, and Chief of Operations Officer of Vivaldi Servicios de Seguridad, Inc., in San Juan, Puerto Rico this 6th day of February of 2018, identified with Driver's License #822848 from Puerto Rico.



**Public Notary**

Commission does not expire.

EDDIE RAMIREZ

PUERTO RICO
ABOGADO NOTARIO

22