# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| VIVALDI SERVICIOS DE SEGURIDAD, INC. <br><br> PLAINTIFFS, <br><br> v. <br><br> MAISO Group, Corp.; <br> a/k/a MAISO Group, <br> a/k/a Maisogroup, <br> a/k/a Grupo Maiso, <br><br> JORGE W. MAISONET-RIVERA, <br><br> WILLIAM MAISONET-RODRIGUEZ, <br><br> EVELYN RIVERA, <br><br> THE CONJUGAL PARTNERSHIP OF WILLIAM MAISONET RODRIGUEZ, and EVELYN RIVERA, <br><br> TRANSCRIPCIONES JOREV, CORP., <br><br> LENDING EASE, CORP., <br><br> INOPALT, INC., <br><br> KITCOR, INC., <br><br> CORPORATION A, <br><br> INSURANCE COMPANY A, <br><br> JOHN DOE, <br><br> JANE DOE, <br><br> DEFENDANTS. | CIVIL NO: 18-CV-01061 WGY <br><br><br><br><br><br> RACKEETER INFLUENCED AND CORRPUT ORGANIZATION ACT "RICO", BREACH OF CONTRACT AND DAMAGES. <br><br><br><br> PLAINTIFF DEMANDS TRIAL BY JURY |

1

# AMENDED VERIFIED COMPLAINT

**COMES NOW** the Plaintiff through the undersigned attorney and very respectfully states, alleges and prays:

**INTRODUCTION:**

The Plaintiff is a corporation dedicated to providing private security services in Puerto Rico to private businesses, hospitals, hotels and oter entities.  It employs over Four Hundred (400) people with security posts and missions all over the Islands of Puerto Rico and the US Virgin Islands. Since 2015, the Plaintiff has been a victim of a fraudulent scheme by which the defendants embezzled the funds reserved in a special account to pay IRS, Taxes and other important obligations and employee benefits.

The fraudulent scheme was discovered in June of 2017 and since then, the Plaintiff has been struggling to survive paying taxes, penalties, interests and making payment plans with different agencies in Puerto Rico.  The defendants misappropriated over $760,000.00 from 2015 to 2017 in a continuous and related series of predicate acts.

The scheme depicted in this Complaint is a casebook Racketeering enterprise.  All the necessary elements of a RICO Civil Action are present in this Complaint exceeding the elements necessary to bring this type of action in this District.  The Defendants individually and/or together as a conspiracy,

formed an enterprise for Racketeering activities called MAISO Group, Corp. The Plaintiff's damages, without considering, interests, attorneys' fees, costs, and treble damages under RICO, exceed $2,262,000.00.

## I. JURISDICTION AND VENUE:

1. This Honorable Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 given that the civil action arises from a Federal Statute. (Title 28, Section 1331 of the United States Code confers upon federal district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States.") The Federal Statute or Question is the **RACKEETER INFLUENCED AND CORRPUT ORGANIZATION ACT "RICO"**, 18 U.S.C. § 1962 (a), (b), (c) and (d) and 18 U.S.C. § 1964 (c). Venue is proper pursuant to 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965.

## II. PARTIES TO THE AMENDED VERIFIED COMPLAINT:

1. Plaintiff **VIVALDI SERVICIOS DE SEGURIDAD, INC.**, is a For Profit Corporation, in good standing and created under the Laws of the Commonwealth of Puerto Rico, Register Number 329119, the Principal Offices of the Corporation are in San Juan, Puerto Rico. Hereinafter referred as to as The Plaintiff.

2.   Defendant **JORGE W. MAISONET RIVERA** is of legal age, single, accountant, business owner and resident of San Juan, Puerto Rico. His postal address is P.O. Box 1734, Bayamón, PR 00960-1734.

3.   Defendant **WILLIAM MAISONET RODRIGUEZ** is of legal age, married, attorney at law, notary public, business owner and resident of San Juan, Puerto Rico. His postal address is P.O. Box 1734, Bayamón, P.R. 00960-1734.

5.   Defendant **EVELYN RIVERA** is of legal age, married to co-defendant William Maisonet Rodriguez, administrator of MAISO GROUP, business owner and resident of San Juan, Puerto Rico. Her postal address is P.O. Box 1734, Bayamón, P.R. 00960-1734.

6.   The **CONJUGAL PARTNERSHIP OF WILLIAM MAISONET RODRIGUEZ**, is the conjugal partnership created by act of marriage under the Civil Code of Puerto Rico, between the co-defendant **William Maisonet Rodriguez** and **Mrs. Evelyn Rivera**, hereby included in this Complaint.

7.   **MAISO GROUP** is a business entity (not registered as a corporation at the Department of State of the Commonwealth of Puerto Rico) with Offices in Bayamon, Puerto Rico, marketed, promoted and used to do business and provide accounting and business counseling in Puerto Rico. The defendants **JORGE MAISONET RIVERA**, **WILLIAM MAISONET RODRIGUEZ** and

**EVELYN RIVERA** are all administrators and "*de facto*" partners of **MAISO GROUP.**

8.   Defendant **TRANSCRIPCIONES JOREV, CORP.,** is a corporation created under the Laws of the Commonwealth of Puerto Rico, involved in the predicate acts of the Racketeering Enterprise.  Its postal address is P.O. Box 1734, Bayamón, P.R. 00960-1734.

9.   Defendant **LENDING EASE, CORP.** is a corporation created under the Laws of the Commonwealth of Puerto Rico, involved in the predicate acts of the Racketeering Enterprise. Its postal address is P.O. Box 1734, Bayamón, P.R. 00960-1734.

10.  Defendant **INOPALT, INC.** is a corporation created under the Laws of the Commonwealth of Puerto Rico, involved in the predicate acts of the Racketeering Enterprise.  Its postal address is P.O. Box 1734, Bayamón, P.R. 00960-1734.

11. The Defendant **CORPORATION A** is an unknown corporate entity brought to the Complaint under the reasonable believe that there are corporate entities involved in the illegal and tortuous predicate acts of the Defendants and will be discovered using the Discovery.

12.  **INSURANCE COMPANY A** is an Unknown Defendant brought to the Complaint under the reasonable believe that there is an Insurance Company insuring the Defendants under a General Liability or any other type

of insurance policy to cover the damages suffered by the Plaintiff for the illegal and tortuous acts of the Defendants.

13. **JOHN DOE** and **JANE DOE** are fictitious names to bring to the Complaint persons involved in the Racketeering Activities unknown to the Plaintiff at this time.

14. Due to the fraudulent nature of the predicate acts and the concealment of information typical of Racketeering activities, some of the Defendants represented as corporations could be d/b/a's, De Facto Partnerships or De Facto Corporations, but all were involved in the racketeering as Entities, as defined under The RICO Act.  He defendants also used aliases to perform bank transactions such as Esar Vivaldi, Carlos, and other fictitious names.   It is alleged that **JORGE MAISONET RIVERA, WILLIAM MAISONET RODRIGUEZ** and **EVELYN RIVERA** were hiding behind those names to conceal the predicate acts.

### III. COUNT (1) ONE OF THE COMPLAINT:

(All the previous allegations and paragraphs
are re-alleged in this section of the Complaint)

18 US CODE Section 1961(a)

(a)   **It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity** or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, **to use or invest, directly or indirectly, any**

> **part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce…"**

1. The Plaintiff is a corporation, in good standing and created under the Laws of the Commonwealth of Puerto Rico, Register Number 329119, the Principal Offices of the Corporation are in San Juan, Puerto Rico.

2. Since its creation **MAISO GROUP, CORP.** was formed by **JORGE W. MAISONET RIVERA**, WILLIAM MAISONET RODRIGUEZ and EVELYN RIVERA. The entity has been in business since its creation to the present.

3. Prior to **MAISO GROUP**, Jorge W. Maisonet was working as Maisonet Accounting, but he joined his parents to create the entity **MAISO GROUP** and offer more services. For example, the services included payroll management, accounting, legal counseling, obtaining licenses and official documents for clients, transcripts and para-legal work.

4. The Plaintiff retained the services of MAISO GROUP on March of 2015 for a Monthly Flat Fee of Four Hundred Dollars ($400.00). This Fee was raised several months later to One Thousand Dollars ($1,000.00) per month after the Plaintiff acquired a Private Security Company and expanded in terms of activities and amount of employees.

5. Since the beginning of the services, **MAISO GROUP** operated from their office in Bayamon, P.R. **JORGE W. MAISONET-RIVERA**, **WILLIAM**

**MAISONET RODRIGUEZ** and **EVELYN RIVERA** shared office, administration, telephone numbers, permits, sign, postal address and all utilities including Internet.

6. **WILLIAM MAISONET RODRIGUEZ** offered legal advice as partner of **MAISO GROUP** and was also a senior partner with knowledge of activities, decision making authority and economic interest in the entity.

7. **EVELYN RIVERA** was the business administrator of **MAISO GROUP** with knowledge of activities, decision making authority and economic interest in the entity.  She oversaw **MAISO GROUP's** business endeavor called **TRANSCRIPCIONES JOREV,** a corporation created by **WILLIAM MAISONET RODRIGUEZ** acting as incorporator and President.

8. **TRANSCRIPCIONES JOREV** got its name from the mix of **JORGE** and **EVELYN** and provides transcription services to clients in Puerto Rico including the PR Department of Justice. It is alleged that **TRANSCRIPCIONES JOREV** was used to receive embezzled funds and to launder proceeds. This entity never provided real services to the Plaintiff.

9. **WILLIAM MAISONET RODRIGUEZ** was essential to the success of the **RICO** conspiracy. He provided the legal advice, office, personnel and also received payments from the embezzled funds using his business bank account. More than Thirty-Two Thousand Dollars ($32,000.00) of the

embezzled funds were received by attorney **WILLIAM MAISONET RODRIGUEZ** through **TRANSCRIPCIONES JOREV**.

10. **MAISO GROUP's** racketeering activities affected the interstate commerce. They used the US Mail, Internet, Wire Bank Transfers, and their email accounts to commit the predicate acts.

11. **MAISO GROUP** used third parties as shields to create corporations and hide the embezzled funds through a scheme of money laundering that caused serious damages to the Plaintiff and continues doing business in Puerto Rico affecting other companies and individuals.

12. Even after the discovery of the **RICO Enterprise's scheme**, **MAISO GROUP** has continued operating in Puerto Rico with several Clients that are not aware of the nature of the enterprise. **JORGE W. MAISONET RIVERA** still uses the properties of his Partners as office and as residence.

13. The scheme of racketeering put in place by the defendants **WILLIAM MAISONET RODRIGUEZ, JORGE W. MAISONET RIVERA** and **EVELYN MAISONET** was the following:

A. Promote **MAISO GROUP** as an entity dedicated to managing the accounting and payroll of small and medium businesses.

B. Obtain access to the Zero Balance Accounts of the Clients were the funds for Taxes and Employee benefits were deposited.

C. Changing the postal address in all pertaining agencies to the postal address of **MAISO GROUP** and **BUFETE MAISONET** to avoid detection.

D.  Create corporations controlled by the Conspirators, to make funds transfers from the Zero Balance Bank Accounts.

E.  Invest the embezzled funds in legal businesses such as restaurants and financial lending companies to make profit and launder the funds. Then returning funds to the Plaintiff in the way of "Loans to Operate".

F.  Representing a very bad financial situation to the share-holders so they could buy the Company.

G.  Acquiring the 100% of shares of stock, using the proceeds produced by the Racketeering Enterprise and other funds hidden in the fraudulent companies.

H.  After acquiring the majority of shares of the Plaintiff, the **MAISO GROUP** would have evaded civil and criminal prosecution for their actions.

14.  **WILLIAM MAISONET RODRIGUEZ** was the intellectual mind behind **MAISO GROUP** using his Wife and co-defendant as administrator and his son **JORGE W. MAISONET RIVERA** as agent with full knowledge of the scheme.

15.  **MAISO GROUP** has acted before, is currently engaged in the same type of activities and represents a risk of future Racketeering predicate acts.  Our investigation showed that they are working in Two businesses in San Juan using the same scheme of obtaining control of their bank accounts and assets.   The recent developments with

10

Restaurant Kalifa in Hato Rey, were **MAISO GROUP, CORP**. was sued in the San Juan Superior Curt shows that their activities represent a risk of future damages to others.

16.      Since the filling of this Complaint the Defendants **WILLIAM MAISONET-RODRIGUEZ** and **EVELYN RIVERA** have been selling assets and closing bank accounts transferring the money out of the Jurisdiction.  It is alleged that these sales and movements of assets are designed to disappear the money embezzled from the Plaintiff.

17.      **MAISO GROUP** obtained access to the Plaintiff's Bank Account on First Bank of Puerto Rico, with Bank Account Number 42-xxxx2899. The account token possession was part of the access to the Bank Account provided to **MAISO GROUP** to "legally" manage the accounting process, including payments, deposits and the payroll of the Plaintiff **-**  Payroll Account 42-092xxxx098.

18.      All Defendants including **WILLIAM MAISONET RODRIGUEZ** and **EVELYN RIVERA** had personal knowledge of the **MAISO GROUP** activities, and the Racketeering Scheme, their conduct, actions and expressions showed intention and criminal knowledge. **JORGE W. MAISONET RIVERA** had constant meetings with them to report his actions and they also received the documents from Government agencies and Banks showing the account statements and invoices. Although they met with Juan G. Sanchez in several occasions during the

length of time of the conspiracy, they never mentioned to Mr. Sanchez that there were problems with unpaid IRS debts, nor Department of Treasury collection letters. Their concealment of the mailing and information was crucial for the success of the Racketeering conspiracy.

**19.** **INOPALT, INC.** is an alter ego of **MAISO GROUP**, this corporation was created with the specific purpose of concealing and laundering thousands of dollars obtained fraudulently from the Plaintiff.

**20.** **KITCOR, INC.** is an alter ego of **MAISO GROUP**, this corporation was acquired to obtain the possession and title of Tony's Pizzeria in Hato Rey and Kalifa Restaurant in Hato Rey. The funds used to buy and operate these restaurants was embezzled from the Plaintiff. **WILLIAM MAISONET RODRIGUEZ**, **JORGE W. MAISONET RIVERA** and **EVELYN RIVERA** conspired to use the money from the Plaintiff to buy these two restaurants to launder the money obtained illegally from the Plaintiff.

## IV. COUNT (2) TWO OF THE COMPLAINT:

(b) **It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.**

(All the previous allegations and paragraphs
are re-alleged in this section of the Complaint)

21.   Part of the funds obtained by the Defendants **JORGE W. MAISONET RIVERA, WILLIAM MAISONET RODRIGUEZ AND EVELYN RIVERA** from the pattern of Racketeering Activity against the Plaintiff, were invested in businesses such as those owned **by TRANSCRIPCIONES JOREV, CORP., LENDING EASE, CORP., INOPALT, INC., and KITCOR, INC.**

22.   The purpose of investing in these businesses was to launder the funds and to conceal the embezzlement from the Plaintiff.

23.   The Defendants violated 18 U.S.C. Section 1961 (b), criminally, intentionally and with all the necessary premeditation, directly or indirectly by participating as leaders or facilitators, aiding and abetting each other.

### V. COUNT (3) THREE OF THE COMPLAINT:

(b)   It shall be unlawful for any **person** employed by or associated with any **enterprise** engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such **enterprise**'s affairs through a pattern of **racketeering activity** or collection of unlawful debt.

(All the previous allegations and paragraphs
are re-alleged in this section of the Complaint)

24.   The Defendants **WILLIAM MAISONET RODRIGUEZ** and **EVELYN RIVERA**, are associates of TRANSCRIPCIONES JOREV, CORP. and JORGE W. MAISONET RIVERA and are engaged in activities which affect interstate

commerce. They participate directly or indirectly in the conduct of such enterprise's affairs through a pattern of racketeering activity.

25.   The Defendants **WILLIAM MAISONET RODRIGUEZ** and **EVELYN RIVERA** have violated 18 U.S. Code Section 1961 (c) and continue in the same line of business and Racketeering activities from their Offices in Puerto Rico.

### VI. COUNT FOUR (4) OF THE COMPLAINT:

(c)    It shall be unlawful for any person to conspire to violate any of
         the provisions of subsection (a), (b), or (c) of this section.

(All the previous allegations and paragraphs
are re-alleged in this section of the Complaint)

26.   The defendants **JORGE MAISONET RIVERA**, **WILLIAM MAISONET RODRIGUEZ** and **EVELYN RIVERA** are all administrators and "*de facto*" partners of **MAISO GROUP,** conspired to violate subsections (a) (b) and (c) of the 18 US Code 1961.

27.   The defendants **JORGE MAISONET RIVERA**, **WILLIAM MAISONET RODRIGUEZ** and **EVELYN RIVERA** agreed to have offices, hired personnel, signed documents, represented themselves as a group, acted as a Group, accepted payments from embezzled funds and had a common interest in the predicate acts committed against the Plaintiff.  Even after the discovery of the fraud and the filing of this Complaint, they have been working together in the

same office and aiding each other to get rid of evidence and assets that are directly related to the embezzled funds.

## VII. ALLEGATIONS PERTAINING TO
## LIKELIHOOD OF FUTURE VIOLATIONS

(All the previous allegations and paragraphs
are re-alleged in this section of the Complaint)

26.     It is alleged that **MAISO GROUP**, is still engaged in the same Racketeering scheme and is affecting several victims in different municipalities of Puerto Rico.  There are businesses using the services of the Racketeering Enterprise and other Three (3) suffered the consequences of the fraudulent predicate acts just several months ago. Among these are Tony's Restaurant in Hato Rey, Kalifa Restaurant in Hato Rey and Gringo's Bar & Grill in Old San Juan.

27.     These new victims will suffer similar damages due to the nature of the Predicate Acts of embezzlement. The criminal elements of embezzlement are: (i) the fraudulent (ii) conversion (iii) of the property (iv) of another person (v) by the person who has lawful possession of the property. Fraudulence: The requirement that the conversion be (i) fraudulent requires that the embezzler willfully, and without claim of right or mistake, converted the entrusted property to their own use. (ii) Criminal conversion: Embezzlement is a crime against ownership, that is, voiding the right of the owner to control the disposition and use of

the property entrusted to the embezzler. The element of criminal conversion requires substantial interference with the property rights of the owner (unlike larceny, wherein the slightest movement of the property, when accompanied by the intent to permanently deprive the owner of possession of the property is sufficient cause). (iii) Property: Embezzlement statutes do not limit the scope of the crime to conversions of personal property. Statutes generally include conversion of tangible personal property, intangible personal property, and choses in action. Real property is not typically included. (iv) of another: A person cannot embezzle his or her own property. (v) Lawful possession: The critical element is that the embezzler must have been in lawful possession of the property at the time of the fraudulent conversion, and not merely have custody of the property. If the thief had lawful possession of the property, the crime is embezzlement; if the thief merely had custody, the crime at common law is larceny.

28.     An independent audit of the Plaintiff's Commercial activities showed that a portion of embezzled funds were reinvested in places in and out of Puerto Rico using off shore accounts. **WILLIAM MAISONET RODRIGUEZ** participated in these transactions with **EVELYN MAISONET** and **JORGE W. MAISONET**. The Racketeering Activities continue and have not stopped because of this case. MAISO GROUP

continues acting from the same office in Bayamon and with the same team of people.

29.     **WILLIAM MAISONET RIVERA**, **JORGE W. MAISONET** and **EVELYN RIVERA** are currently acting as consultants for several companies in Puerto Rico that are unaware of their modus operandi. The Plaintiff is still trying to cover payments of obligations that were supposed to be paid by **MAISO GROUP**.  If the Court does not stop them, many other victims will appear. It is alleged that MAISO GROUP, announces its services in media such as Facebook, Instagram and other Social Media.  Members of the Conspiracy sell their services by visiting businesses offering their "attractive" packages.

30.     For information and belief, the Plaintiffs are moving assets, transferring money from bank accounts and faking documents to appear like selling their interest in valuable property. These evasive tactics to avoid collection of a future sentence is part of the Racketeering scheme and is just happening.

31.     Several employees of the Plaintiff have experienced fraud with their social security numbers and credit inquiries and stolen identification. The **MAISO GROUP** has access to confidential information of hundreds of employees, the information has not been returned to the Plaintiff.  The Racketeering activities are alleged to include misappropriation of protected confidential data from employees.

## VIII. <u>SPECIFIC ALLEGATIONS AS TO PREDICATE ACTS OF EMBEZZLEMENT AND FRAUD.</u>

(When used in this Complaint, "**MAISO GROUP**" means an Enterprise as defined by the RICO Act, formed by the Defendants.)

32.     The Predicated Acts of **MAISO GROUP** were continuous from June 26, 2015 to June 23, 2017. Since they still have information about our employees and accounts, their acts continue as to this date.

33.     **MAISO GROUP** committed more than two predicate acts in a Period of Ten Years.

34.     The Racketeering Activity Period of **MAISO GROUP** against the Plaintiff extended for more than two (2) years from June 24, 2015 to the Present.

**A. 2015:**

1. June 26, 2015, transfer in the amount of $2500 to an account named Jorge Maisonet, Account No. 15-XXX48767.

2. July 1st, 2015, transfer of $5,000 to an entity named INOPALT, Account No. 01-XXXX1168. On the same day transfer of $1,000 to an entity named Lending Ease Account No. 31-XXXX3548, and also a transfer of $1,500 to Jorge W. Maisonet to Account No. 51-XXXX4519.

3. July 10, 2015, transfer of $3,000 to the account of Jorge Maisonet, Account No. 15-XXXX8767.

4.  July 24, 2015, transfer of $1,000.00 to the account of Jorge Maisonet Account No. 15-XXXX8767 and other of $4,300.00 to Jorge W. Maisonet 51-XXXX4519.

5.  August 7, 2015, transfer of $4,300.00 to the account of Jorge W. Maisonet, Account No.  51-00064519.

6.  Sept 4, 2015, transfer of $1,000 to Jorge Maisonet and $4,300 to Jorge W. Maisonet.

7.  Sept 18, 2015, transfer of $1,000 to Jorge Maisonet and $4,300 to Jorge W. Maisonet.

8.  Oct. 2, 2015, transfer of $1,000 and $4,300 to Jorge W. Maisonet

9.  Oct 16, 2015, transfer of $1,000 y $4,300 a Jorge W. Maisonet

10.  Oct 30, 2015, transfer of $4,300 a Jorge W. Maisonet.

11.  Nov 13, 2015, transfer of $1,500 to Jorge Maisonet and $4,300 a Jorge W. Maisonet.

12.  Nov 27, 2015, transfer of $4,300 to INOPALT and $4,300 to Jorge W. Maisonet.

13.  Dec 4, 2015, transfer to an entity named INOPALT of $2,000.

14.  Dec. 11, 2015, transfer of $4,300 to INOPALT and $4,300 to Jorge W. Maisonet.

15.  Dec 24, 2015, transfer of $1,500.00 to INOPACT and $4,300 to Jorge W. Maisonet.

Through the herein described pattern of racketeering, the Plaintiffs embezzled $89,000.00 only in 2015.

**B. 2016:**

1. January 7, 2016, $4,300 to INOPALT and $1,500 to Jorge W. Maisonet but on the same date the name of Jorge W. Maisionet was changed in the account for Esar Vivaldi, this name was used to confuse the Banks with the name of César Vivaldi.

2. January 22, 2016, transfer of $4,300 to INOPALT; $4,300 to Jorge Maisonet and $4,300 to Esar Vivaldi.

3. February 4, 2016, transfer of $4,300 to INOPALT and $4,300 to Jorge Maisonet.

4. February 18, 2016, transfer of $4,300 to INOPACT; $4,300 to LENDING EASE and $4,300 to Jorge W. Maisonet c/p Esar Vivaldi

5. February 23, 2016, transfer to Esar Vivaldi in the amount of $3,586.76.

6. February 25, 2016, transfer to INOPALT in the amount of $3,500.00.

7. March 3, 2016, transfer to INOPACT in the amount of $4,300 and other payment of $4,300 to Esar Vivaldi.

8. March 9, 2016, transfer to INOPACT in the amount of $2,000.00; $1,000.00 to Lending Ease and $2,000.00 to Esar Vivaldi.

To fulfill our obligation to allege a Pattern of Racketeering through Predicated Acts, we have only mentioned and alleged a small part of the fraudulent transactions that will be established on Discovery. The Total estimated amount for Year 2016 of funds embezzled by the defendants is $501,977.80.

## C.  2017:

1. January 18, 2017, transfer of $4,200 to Jorge W. Maisonet.

2. January 27, 2017, transfer of $2500 to Jorge W. Maisonet.

3. Feb 1, 2017, transfer of $2,500 to INOPALT, $2,500 to "TRANSCRIPCIONES" and $2,500.00 to LENDING EASE.

4. Feb 3, 2017, transfer of $4,300 to Jorge W. Maisonet.

5. Feb 6, 2017, transfer of $3,500 to INOPALT.

6. The last discovered predicate act was committed on June 23, 2017 with a transfer of $1,652.38 to INOPALT, $1,635.28 to TRANSCRIPCIONES and $2,537.02 to LENDING EASE.

To fulfill our obligation to allege a Pattern of Racketeering through Predicated Acts, we have only mentioned and alleged a small part of the fraudulent transactions that will be established on Discovery. The Total

estimated amount for Year 2017 of funds embezzled by the Defendants is $191,050.42.

35.     Defendants' predicate acts constituted a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) because the predicate acts are related and continuous. Each predicate act had the same or similar purpose: the predicate acts involved material misrepresentations, embezzlement, money laundering, and concealment of funds in a scheme to defraud the Plaintiff.

36.     Plaintiff has sufficiently alleged predicate acts and a pattern of racketeering to state a claim under 18 U.S.C. § 1962. As a proximate result of the pattern of racketeering activity and RICO violations engaged in by Defendants, Plaintiff have suffered injury to its business and property.

37.     As a proximate result of the pattern of racketeering activity and RICO violations engaged in by Defendants, Plaintiff has suffered injury to its business and property.

38.     Defendants violated 18 U.S.C. § 1962(d) by conspiring with each other to engage in the predicate acts alleged to form the violation of 18 U.S.C. § 1962(c), as described above. Defendants agreed to the objective of this conspiracy and it was to embezzle funds and then reinvest the funds in buying the Plaintiff.

39.     The Defendants acting with a common plan and interest withheld assets for the purpose of conversion of such assets, by **JORGE W. MAISONET RIVERA** to whom the assets were entrusted. This financial fraud was specifically directed to embezzle funds from the accounts of the Plaintiff.

40.     **WILLIAM MAISONET RODRIGUEZ, EVELYN RIVERA** and **JORGE MAISONET RIVERA** planned the embezzlements with another person in a premeditated, performed methodically, and precautious way that concealed the criminal conversion of the property, which occurred without the knowledge or consent of the Plaintiff.  The acquisition of several businesses for which **WILLIAM MAISONET RODRIGUEZ** acted as attorney and **JORGE MAISONET RIVERA** as president, was part of the plan to conceal the conversion.

41.     The Relevant Time Period for Defendants' conspiracy stems from at least the year 2015 to the year 2017.

42.     As a proximate result of the overt acts taken by Defendants, Plaintiff has suffered injury to their business and property.

43.     To this date, the Plaintiff has suffered the following damages caused by Defendants acts (**DAMAGES ARE CONTINUOUS DUE TO THE APPROPRIATION OF INFORMATION AND DOCUMENTS NECESSARY TO RETAKE THE ACCOUNTING OF THE COMPANY):**

a. Monetary Loss in the amount of $782,028.22.

b. An estimated amount of not less than $400,000.00 for interests and penalties that Plaintiff has paid or will have to pay due to the deviation of funds necessary to pay its obligations with Department of Treasury, IRS, Department of Labor and other Government entities.

Plaintiffs also request an award of reasonable attorney's fees pursuant to 18 U.S.C. §1964(c).

44.      Plaintiffs were defrauded by Defendants in the professional services contract that they celebrated. The acts of fraud and deceit, as well as the times and dates they were perpetuated, and the fraudulent statements are discussed in all previous paragraphs. Hence, defendants are vicariously liable to Plaintiffs for all their damages.

## IX.   COUNT FIVE (5) OF THE COMPLAINT

## ARTICLE 1210 PUERTO RICO CIVIL CODE

(All the previous allegations and paragraphs
are re-alleged in this section of the Complaint)

45.      In addition to the fraud stated in this complaint, defendants violated the covenants of good faith and fair dealing in violation of Artícule 1210 Puerto Rico Civil Code, 31 L.P.R.A. § 3375 and defendants are liable to them due to their acts and omissions.

## X.   COUNT SIX (6) OF THE COMPLAINT
## ARTICLE 1803 OF THE PR CIVIL CODE

(All the previous allegations and paragraphs
are re-alleged in this section of the Complaint)

46.     All Defendants are liable under Article 1802 of the PR Civil Code, for their tortuous actions and omissions including but not limited to willful negligence.

## XI.   COUNT SEVEN (7) OF THE COMPLAINT

## ARTICLE 1803 OF THE PR CIVIL CODE

(All the previous allegations and paragraphs
are re-alleged in this section of the Complaint)

47.     All Defendants are liable under Article 1803 of the PR Civil Code, for the tortuous actions and omissions of their agents and employees that caused damages to the Plaintiff.

## XII.  ALLEGATIONS RELEVANT TO THE CORPORATE ENTITIES AS INSTRUMENTS OF THE RICO CONSPIRACY.

48.     All Defendants that are currently active corporations are "alter egos" of the personal defendants, the corporate veil must be removed by the Court. These corporations were used as tools to facilitate the Racketeering Scheme and to receive and laundered illegally obtained funds that ended in possession of the personal defendants. It is

requested that the corporations Transcripciones Jover, Corp. Lending Ease, Corp., Inopalt, Inc. and Kitcor, Inc., be treated as alter egos of inefficient corporate entities owned by MAISO GROUP and its members.

## XIII. ALLEGATIONS COMMON TO ALL DEFENDANTS AND COUNTS:

49.     Plaintiff have sufficiently alleged these predicate acts and pattern of racketeering to state a claim under 18 U.S.C. § 1962. As a proximate result of the pattern of racketeering activity and RICO violations engaged in by Defendants, Plaintiff have suffered injury to its business and property.

50.     As a proximate result of the pattern of racketeering activity and RICO violations engaged in by Defendants, Plaintiff has suffered injury to its business and property.

51.     Defendants violated 18 U.S.C. § 1962(d) by conspiring with each other to engage in the predicate acts alleged to form the violation of 18 U.S.C. § 1962(c), as described above. Defendants agreed to the objective of this conspiracy. Defendants took overt acts in furtherance of that conspiracy.

52.     The Relevant Time Period for Defendants' conspiracy stems from at least the year 2015 to the year 2017. As a proximate result of the overt acts taken by Defendants, Plaintiff has suffered injury to their business and property.

53.     The Plaintiff was growing its business exponentially in a market that needs private security, especially after the pass of Hurricanes Irma and Maria. Private Security companies have seen their business grow with additional security guard posts, need of armed escorts for diesel trucks and electric plant generators all over the Island and USVI.

54.     The lack of economic resources and cash flow caused by the Defendants with their Racketeering Scheme caused the Plaintiff to hold the recruiting of personnel and the acquisition of patrolling vehicles, redirecting the funds to pay the IRS, State Insurance Fund premiums, Department of Treasure Taxes, and other obligations that were supposed to be paid with the funds embezzled by **MAISO GROUP, CORP**. This situation has caused serious damages to the image of the company, the loss of income and potential of expansion are direct and indirect effects of the Racketeering activities of the Defendants.

55.     **WILLIAM MAISONET RODRIGUEZ** and **EVELYN RIVERA** used employees and agents under **MAISO GROUP, CORP.**, and/or paid by **JORGE W. MAISONET-RIVERA** to perform many duties of their office. These employees committed or participated in the Predicate Acts by concealing information, in doing so, they caused damages in reckless disregard of, or wanton indifference to, the harmful consequences to the property the Plaintiff.

56.     All Defendants are jointly liable for the damages caused to the Plaintiff by their Scheme of Racketeering. The acts of the defendants showed great disregard for the Law and risk of future similar violations such as the ones being committed as of today with Two local businesses in San Juan, P.R. in Kalifa Restaurant and Gringo's Restaurant. Both business owners will be subpoenaed as part of this case to testify and deliver accounting records.

57.     To this date, the Plaintiff has suffered the following damages:

a. Monetary Loss for more than $760,000.00.

b. An estimated amount of not less than $500,000.00 for interests and penalties that Plaintiff has paid or will have to pay due to the deviation of funds necessary to pay its obligations with Department of Treasury, IRS, Department of Labor and other Government entities.

c.  Loss of business growth due to the lack of available funds to obtain equipment, hire employees and compete in the Private Security Market, estimated in more than $1,000,000.00.

Plaintiff also request an award of costs, expenses and reasonable attorney's fees pursuant to 18 U.S. Code Section 1964.

**Treble damages are requested under  RICO ACT 18 U.S.C. Section 1962.**

28

58.     Plaintiffs demand that all questions of fact, compensation for damages and legal fees be decided by a jury.

**WHEREFORE**, the Plaintiff respectfully request that a judgment be entered after Jury Trial awarding to Plaintiff a compensation, as follows:

a. Monetary Loss of more than $760,000.00.

b. An estimated amount of not less than $500,000.00 for interests and penalties that Plaintiff has paid or will have to pay due to the deviation of funds necessary to pay its obligations with Department of Treasury, IRS, Department of Labor and other Government entities.

c.  Loss of business growth due to the lack of available funds to obtain equipment, hire employees and compete in the Private Security Market, estimated in more than $1,000,000.00.

Plaintiff also request an award of costs, expenses and reasonable attorney's fees pursuant to 18 U.S. Code Section 1964.

**Treble damages are requested under  RICO ACT 18 U.S.C. Section 1962.**

d. Judgment in State actions claims in an amount equal to the claims herein contained.

e. All further relief as the Court and/or the jury may deem appropriate, legal or equitable, in any form to which Plaintiffs may be entitled.

Respectfully submitted on this 1st day of June, 2018.

S/*Peter Díaz Santiago*
**PETER DIAZ SANTIAGO, ESQ.**
**USDC PR 215104**
PMB 301, 220 DOMENECH AVENUE
SAN JUAN, PR 00919-4000
TEL.: 787-414-3214
Pdiaz.notifications@gmail.com